UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
HUAYUAN CHEN,

                                   Plaintiff,                    **MEMORANDUM
                                                                 AND OPINION**
            -against-                                            CV 15-6698 (JMA)(AYS)

STONY BROOK UNIVERSITY, EWARD W.
TESTA, JR., & KATHLEEN LEVINESS,

                                   Defendants.
-------------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

This is an employment discrimination case in which Plaintiff Huayuan Chen ("Plaintiff"

or "Chen"), a 49-year-old Asian woman, asserts claims of employment discrimination against

her former employer, Defendant Stony Brook University ("SBU"), and individual Defendants,

Edward W. Testa, Jr. ("Testa"), and Kathleen Le Viness ("Le Viness"). Specifically, Plaintiff

claims that she was subjected to discrimination based on her age and national origin in violation

of 42 U.S.C. Section 1983, Title VII, and the New York Executive Law ("NYEL"). According to

Plaintiff, the alleged discrimination culminated with her unlawful termination on November 4,

2014. See Amended Complaint ("Am. Compl."), Docket Entry ("DE") 13. Plaintiff seeks actual,

compensatory, emotional, and punitive damages. Presently before the Court is Plaintiff's motion

to re-open and compel discovery.

BACKGROUND

I.      Factual Background

Plaintiff is an Asian woman who was employed by SBU for approximately nine months.

She was 49 years old throughout her employment with SBU. DE 13 at ¶¶ 7-9. Plaintiff was hired

at SBU's Advancement department as a lead programmer on March 12, 2014. Her

responsibilities in this role included analyzing and interpreting data, using statistics and predictive modeling to discover patterns in large data sets, and developing and analyzing business performance reports from a database known as "Raiser's Edge". DE 13 at ¶ 20. During her employment with SBU, Plaintiff was supervised by Le Viness, who was supervised by Testa. DE 13 at ¶¶ 22-37. During the same time, both Plaintiff and Susan Agro ("Agro") reported to Le Viness and Testa. Plaintiff describes Agro as a similarly situated much younger, non-Asian Lead Programmer Analyst. DE 13 at ¶ 70. According to Plaintiff, Agro often made mistakes and did not possess the same knowledge as Plaintiff. Plaintiff alleges that when she tried to help Agro, she refused to listen and would yell at Plaintiff. DE 13 at ¶¶ 31, 43, 47. Plaintiff contends that she similarly attempted to help Le Viness, who not only refused to listen to Plaintiff, but also stated on Plaintiff's performance review that Plaintiff was doing tasks the difficult way. DE 13 at ¶ 41, 44. Plaintiff alleges that Testa, Le Viness and Agro improperly maintained data incorrectly despite knowing that many mistakes existed in the Raiser's Edge database. DE 13 at ¶ 48. According to Plaintiff, after she found that Agro was using incorrect data to create a backup, Defendants no longer permitted Plaintiff to create certain reports with Agro, and she was, thereafter, told by Testa and Leviness that they wanted her to use their "wrong idea" to perform data analysis. DE 13 at ¶ 48 - 50.

On November 3, 2014, Testa and Le Viness gave Plaintiff a performance review. Plaintiff characterizes the review as "extremely negative." DE 13 at ¶ 51. She further claims it stated many lies, including statements that Plaintiff failed to participate as a SBU volunteer, did not engage in job training, and that she was not qualified for her job. DE 13 at ¶ 53. Plaintiff avers she was not permitted to explain or rebut any of the adverse comments, and that Testa told her "they did not need data quality, they just need to be able to talk to people." DE 13 at ¶ 54.

Plaintiff refused to sign the performance review. DE 13 at ¶ 55. After leaving the SBU

garage, SBU campus police stopped Plaintiff and sent her to the hospital against her will. DE 13

at ¶ 55. The next day, Plaintiff went to SBU to get a copy of her evaluation and to discuss it, and

to meet with her union representative. Plaintiff claims that when she went to the union, the

police, upon the request of Testa and Le Viness, sent Plaintiff back to the hospital against her

will. DE 13 at ¶ 55. Plaintiff was thereafter terminated, in that her employment contract as a

Lead Programmer Analyst at SBU was not renewed. Plaintiff's last day of employment was

November 4, 2014. She states that she has been unable to secure comparable employment since

that date. DE 13 at ¶ 57.

Plaintiff timely filed a claim of discrimination with the Equal Employment Opportunity

Commission (the "EEOC"). DE 13 at ¶ 59. She filed this lawsuit within 90 days of receiving a

Right to Sue letter from that agency. DE 13 at ¶ 60.

II.     Prior Proceedings and the Present Motions

The parties herein have engaged in extensive Tier I and Tier II paper discovery.  Despite

several discovery conferences and multiple extensions of time, this case continues to be litigated.

This Court held an initial conference on May 4, 2016, at which time discovery was scheduled to

close on January 19, 2017. DE 16, 17.  On June 29, 2016, Plaintiff's newly retained counsel

requested, upon consent, a 60 day extension of time to the discovery deadlines. DE 22. This

Court granted the request, and scheduled a discovery conference for October 14, 2016. See Order

dated July 8, 2016. On August 16, 2016, Defendants moved to compel Plaintiff's disclosures as

required, which were to be served by August 3, 2016. As Defendants' letter stated they had filed

the letter only after their follow up requests to Plaintiff went unanswered, the Court scheduled a

telephone conference.  DE 23. During the telephone conference, counsel were directed to comply

with this Court's employment discrimination protocols, and to further submit a revised discovery schedule to the Court by October 21, 2016. DE 24. Thereafter, the Court so ordered the parties' revised discovery schedule, which set all discovery to conclude by May 15, 2017. See Order Dated November 21, 2016.

On November 21, 2016, Defendants moved to compel Plaintiff to produce outstanding discovery. Defendants' motion further stated that their letter seeking such discovery from Plaintiff remained unanswered. DE 26. As Plaintiff failed to respond to Defendants' motion, this Court directed Plaintiff to file a response on the docket by December 6, 2017. See Order dated December 1, 2016. After receiving Plaintiff's response, the Court held a telephone conference. Thereafter, the Court extended Plaintiff's time to serve her first requests for production of documents and interrogatories on Defendants until January 2, 2017. See Order dated December 20, 2016.

On January 25, 2017, this Court scheduled a status conference for February 8, 2017. On January 26, 2017, Plaintiff's counsel requested an adjournment of that conference. DE 31. The Court granted Plaintiff's request, and adjourned the conference until February 16, 2017, a date which Plaintiff's counsel had requested. Thereafter, on February 7, 2017, Defendants filed a motion to compel regarding Plaintiff's recent responses to Defendants' "Request for Production of Documents," and Interrogatories, both dated May 9, 2016, and to move for an extension of time to respond to Plaintiff's written discovery from February 8, 2017 to February 15, 2017. DE 32. On February 15, 2017, Plaintiff's counsel, once again, requested an adjournment. The Court denied Plaintiff's request, and held the status conference on February 16, 2017, as previously scheduled. During the conference, Defendants' motion to compel filed under DE 32, was largely resolved. The Court set a briefing schedule for the parties to address the remaining issue, which

was Plaintiff's objection to supplying tax returns. The parties were further given until February 24, 2017 to file a motion for an extension of time if needed. DE 34.

On February 21, 2017, the parties moved for an extension the discovery deadlines. DE 35. The Court granted the request, and set a discovery end date of July 17, 2017. See Order dated February 22, 2017. On February 23, 2017, and in accordance with the briefing schedule set by the Court, Defendants moved to compel Plaintiff to produce financial documents. DE 37. The motion was fully briefed on March 3, 2017. DE 39. This Court granted Defendants' motion and directed Plaintiff to turn over the requested tax documents by March 31, 2017. DE 40. Plaintiff failed to timely comply with this Court's Order, and on April 12, 2017, Defendants moved to dismiss Plaintiff's complaint for such failure or, in the alternative, to preclude Plaintiff's introduction of any evidence relating to her monetary damages. DE 41. Defendants, on their own accord, withdrew their motion to dismiss after Plaintiff produced the requested tax information. DE 42.

The parties thereafter jointly requested a further extension of time. DE 42. Such request was granted, and the date to complete discovery was extended until August 28, 2017. See Order dated April 28, 2017; DE 42.

On May 30, 2017, Plaintiff requested, upon consent of Defendants, a further one-month extension of time to the discovery deadline because of a family emergency. That request was granted, and this Court extended discovery until September 17, 2017. DE 43. Thereafter, the parties requested, and were granted, two additional extensions of time, moving the deadline for discovery to November 17, 2017. DE 44, 45. On August 11, 2017, the parties requested that the Court adjourn the status conference scheduled for August 14, 2017. DE 46. Based upon the parties' joint representation that depositions were going forward, this Court adjourned the

conference until October 5, 2017, and further directed the parties to submit a joint status letter on October 2, 2017. See Order dated August 13, 2017. The parties timely submitted their status letter, wherein they confirmed that all fact discovery had been completed on August 31, 2017, and that parties "have not contemplated to retain experts in this case, therefore, no expert reports have been exchanged and no expert depositions will be taken." DE 47.

During the status conference on October 5, 2017, and in sharp contrast to the letter filed three days prior, Plaintiff's counsel informed the Court and defense counsel that he was seeking additional discovery, and also stated an intention to utilize an expert and seek expert discovery. Defendants objected to those requests as untimely. The Court directed the parties to confer with regard to Plaintiff's requests, and to submit a joint status letter as to whether an agreement had been reached, or whether motion practice would be required. The Court further directed Plaintiff to make a settlement demand to Defendants by October 19, 2017, and advised Plaintiff that such demand should not contemplate reinstatement. DE 48.

On October 12, 2017, the parties requested a briefing schedule as to a discovery motion. DE 49. The Court issued a briefing schedule on October 13, 2017, wherein the parties were directed to file the fully briefed motion by November 27, 2017. Thereafter, Plaintiff made a request for a two-week extension of time to file her motion, and then requested a two-week extension to file a reply. DE 50, 54. The Court granted Plaintiff's requests, and the parties filed the fully briefed motion on January 8, 2018. DE 55, 56.

As discussed in greater detail below, Plaintiff's motion seeks to reopen discovery for the purposes of (1) allowing further depositions of Testa and Le Viness, (2) to compel the Defendants to produce a copy of the resume and performance reviews of a similarly situated co-worker Susan Agro, and (3) to compel the Defendants to produce log files of the Raiser's Edge

database maintained by the Defendants. DE 56-1. No request is made with respect to any expert discovery. The Court turns to the merits of the motion.

DISCUSSION

I.      Legal Standards

     A.  Standards Applicable to Reopening Fact Discovery

In analyzing a motion to reopen discovery courts must consider whether parties have already been given an adequate opportunity to complete discovery. See Trebor Sportswear Co. v. The Ltd. Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989). In making such determination, courts should consider the following factors:

> (1) the imminence of trial; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court; and (6) the likelihood that the discovery will lead to relevant evidence.

United States v. Prevezon Holdings, Ltd., 236 F. Supp. 3d 871, 873 (S.D.N.Y. 2017); see also Smith v. United States, 834 F.2d 166 (10th Cir. 1987); Callari v. Blackman Plumbing Supply, Inc., 2016 WL 1273237, at *3 (E.D.N.Y. 2016) (collecting cases).

     B.  Standards Applicable to the Scope of Discovery

The scope of discovery is set forth in Rule 26 of the Federal Rules of Civil Procedure. That Rule has been amended, on several occasions, to reflect evolving judgments as to the proper scope of discovery. Over time, these amendments have been aimed at striking the proper balance between the need for evidence, and the avoidance of undue burden or expense. Pothen v. Stony Brook University, 2017 WL 1025856, *2 (E.D.N.Y. 2017). In 1999, Rule 26(b)(1) stated that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the

party seeking discovery or to the claim or defense of any other party." Fed. R. Civ. P. 26(b)(1) (1999). In 2000, in an effort to curb over-discovery that took advantage of tying the term "subject matter" to the definition of the scope of discovery, Rule 26 was amended. See Fed. R. Civ. P. 26(b)(1), Advisory Comm. Notes (2000). That amendment required a party to show "good cause" before obtaining discovery that is "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Id.

Rule 26 was again amended effective December 1, 2015. The scope of discovery is now defined to consist of information that is relevant to the parties' "claims and defenses." Thus, the discretionary authority to allow discovery of "any matter relevant to the subject matter involved in the action" has been eliminated. Additionally, the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant "to any party's claim or defense," also "proportional to the needs of the case." Id.

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Vaigasi v. Solow Mgmt. Corp., 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Further, "[t]he party seeking the discovery must make a prima facie showing, that the discovery sought is more than merely a fishing expedition." Evans v. Calise, 1994 WL 185696, at *1 (S.D.N.Y. 1994); see also Mandell v. The Maxon Co., Inc., 2007 WL 3022552, at *1 (S.D.N.Y. 2007) ("[T]he party seeking discovery bears the burden of initially showing relevance." (citation omitted)); see also Surles v. Air France, 2001 WL 1142231, at *2 (S.D.N.Y. 2001) (refusing to permit discovery where defendant had no factual basis that requests would lead to relevant evidence). It is well-established that "[m]otions to compel are left to the court's sound discretion." Mirra v. Jordan, 2016 WL 889683, at *2 (S.D.N.Y. 2016); see also

Liberty Mut. Ins. Co. v. Kohler Co., 2010 WL 1930270, at *2 (E.D.N.Y. 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court."). Id.

As demonstrated, the discretionary authority to allow discovery of "any matter relevant to the subject matter involved in the action" has been eliminated. Additionally, the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant "to any party's claim or defense," also "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

While proportionality factors have now been incorporated into the Rule 26(b)(1) definition, those factors were already a part of Federal discovery standards, appearing in Rule 26(b)(2)(C)(iii). Those proportionality factors have now been restored to the place of their intended importance by their incorporation into the very definition of permissible discovery. See Fed. R. Civ. P. 26(b)(1), Advisory Comm. Notes (2015) (noting that amendment "restores the place of their intended importance by their incorporation into the very definition of permissible discovery. See Fed. R. Civ. P. 26(b)(1), Advisory Comm. Notes (2015) (noting that amendment "restores the proportionality factors to their original place in defining the scope of discovery," and "reinforces the Rule 26(g) obligation of the parties to consider these factors in making discovery requests, responses, or objections").

The specific proportionality factors to be assessed when considering the scope of discovery are:

- The importance of the issues at stake in the litigation;

- The amount in controversy;

- The parties' relative access to relevant information;

- The parties' resources;

• The importance of discovery in resolving issues; and

• Whether the burden or expense of the discovery is outweighed by the benefit.

Fed. R. Civ. P. 26(b).

Notably absent from the present Rule 26 is the all too familiar, but never correct, iteration of the permissible scope discovery as including all matter that is "reasonably calculated to lead to" the discovery of admissible evidence. This language was never intended to define the scope of discovery, but was intended only to make clear that the discovery is not limited by the concept of admissibility. Unfortunately, the "reasonably calculated" language has often been employed to refer to the actual scope of discovery. Clearing up this misinterpretation, the new Rule disposes of this language, ending the incorrect, but widely quoted, misinterpretation of the scope of discovery. The present definition of the scope of discovery continues to refer to admissibility, but only by stating that "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b).

Overarching the interpretation of Rule 26, and indeed all of the Federal Rules of Civil Procedure, is the standard referred to in Rule 1 thereof. That Rule, as amended in December of 2015, requires that the Federal Rules of Civil Procedure "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding. " Fed. R. Civ. P. 1 (emphasis added). See Comment to 2015 Amendment to Rule 1 (noting that "the parties share the responsibility" to employ the rules consistently with the standards of Rule 1, and that "[e]ffective advocacy is consistent with -- and indeed depends upon -- cooperative and proportional use of procedure") (emphasis added). Judicial involvement has long been recognized as critical to the effective management of discovery. Thus, as early as 1983, the Advisory Committee explained that "[t]he rule

contemplates greater judicial involvement in the discovery process and thus acknowledges the reality that it cannot always operate on a self-regulating basis." Committee Notes (2015) (referring to 1983 notes). Again in 2000, the Advisory Committee noted that it had been "informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery") (Committee Notes 2000). The 2015 amendment revisits this theme, noting that the amendment "again reflects the need for continuing and close judicial involvement in the cases that do not yield readily to the ideal of effective party management," including that cases where "the parties fall short of effective, cooperative management on their own." Advisory Comm. Notes 2015.

With these standards and obligations in mind, the Court turns to the merits of the present motion.

II.     Disposition of the Motion

Plaintiff seeks to re-open discovery in three ways.  First, she seeks to re-call Testa and Le Viness for deposition. Second, she seeks to compel the production of the resume and performance reviews of Susan Agro, who is alleged to be a similarly situated co-worker to plaintiff. Finally, Plaintiff seeks an order compelling the production of log files of the Raiser's Edge database. DE 56-1.

The parties sharply contest whether good cause exists to re-open discovery. Plaintiff's requests to continue depositions are based on the alleged recent disclosure of a memorandum dated June 14, 2014. Her request for Agro's employment documents is based upon the allegation that Agro was similarly situated to Plaintiff and deposition testimony indicating that such documents exist. Finally, the request for the Raiser's Edge documents argues the relevance of the documents to Plaintiff's claims that data was manipulated. Defendants, for their part, oppose

Plaintiff's motion in its entirety. They argue that Plaintiff's request are untimely, and that

Plaintiff has utterly failed to demonstrate why she did not pursue the discovery she now seeks in

a diligent fashion prior to the so-ordered date for the close of fact discovery. DE 59 at 2.

The Court now turns to analyze each of Plaintiff's requests.

1. As to Taking Additional Depositions of Testa and Le Viness

It is undisputed that an internal memorandum dated June 2014 (the "June 2014 Memo")

exists. The June 2014 Memo was written by Testa and Le Viness. It documents Plaintiff's work

performance between May 2, 2012 and June 12, 2014. DE 59 at 5. What is in dispute, and

relevant to the present request to re-open discovery, is when the memo was provided to Plaintiff.

According to Plaintiff, she first learned of its existence during the deposition of Le Viness on

August 31, 2017. Defendants, on the other hand, contend that they previously provided the June

2014 Memo to Plaintiff twice as part of their August 3, 2016 initial disclosures. DE 59 at 6; see

also Toni Logue Declaration ¶ 9, DE 59-1.

Plaintiff raised the June 2014 Memo issue during a status conference on October 5, 2017.

The next day, Defendants provided Plaintiff with a copy of the June 2014 Memo. Plaintiff

contends that this was the first time she was provided with the June 2014 Memo. In sharp

contrast, Defendants claim this was the third time they provided such document. DE 59 at 6. On

December 1, 2017, Defendants served upon Plaintiff newly discovered typewritten notes created

by Ms. Le Viness in 2014 regarding Plaintiff's work performance, along with a screenshot of the

file noting when it was first created and last modified.  DE 59 at 7. Defendants contend that the

late disclosure of the Le Viness notes do not warrant discovery because substantially all of the Le

Viness notes were incorporated verbatim into the June 2014 Memo that was previously provided

to Plaintiff. DE 59 at 7.

Plaintiff claims that the untimely disclosure of the Le Viness notes supports her position that Defendants could have failed to produce and/or did not produce the June 2014 Memo prior to the deposition of Testa. DE 58 at 3-4. Plaintiff further posits that the newly discovered Le Viness notes call into question when Defendants were in possession of the notes and who authored the June 2014 Memo. In sum, Plaintiff argues that the late disclosure of the June 2014 Memo and the Le Viness notes has created a need for further discovery because Plaintiff was not prepared to adequately depose Testa and Le Le Viness during their depositions. DE 56-1 at 4-8.

As both parties proffer different versions of when the June 2014 Memo was disclosed, it is difficult to determine when the disclosure was made. It is possible that Defendant inadvertently failed to incorporate the memo into its early document production, and it is also possible that Plaintiff misplaced the relevant portions of the document disclosure. However, there is no question that Plaintiff learned of the June 2014 Memo prior to August 31, 2017, the last date for discovery. It is further undisputed that Plaintiff failed to call Chambers upon learning of the "missing" June 2014 Memo, failed to request additional time for discovery, and confirmed, by way of joint status letter on October 2, 2017, that fact discovery was complete and that no expert depositions will be taken. DE 47. The Court, therefore, finds that Plaintiff did not diligently work to obtain discovery within the deadlines set by the Court.

Nevertheless, the Court finds some merit in Plaintiff's argument that the December 1, 2017 disclosure of the Le Viness notes raise questions regarding the timing and authorship of the June 2014 Memo. As Plaintiff's discrimination case rests largely on allegations against Testa and Le Viness, their testimony regarding the June 2014 Memo and related notes may be relevant to Plaintiff's claims. The Court will therefore allow continued depositions of both Testa and Le Viness. In view of the fact that these witnesses have already appeared for deposition, and in

accord with the proportionality standards set forth above, the Court will allow only limited

additional depositions. The Court will allow the depositions but the scope of each shall be

limited to the June 2014 Memo and the Le Viness notes, and each deposition shall be limited to

one hour. Such depositions must be taken within thirty (30) days of this Order.

2. <u>As to Compelling Production of Documentation Related to Susan Agro</u>

Throughout the amended complaint, Plaintiff alleges that Agro (an employee alleged to

be similarly situated to Plaintiff) performed poorly, made mistakes, and abused Plaintiff, and that

Defendants failed to discipline Agro for her conduct because she was a non-Asian and/or

younger than Plaintiff. DE 58 at 7. Plaintiff, through an interrogatory, specifically requested

documents related to Agro, including her resume and performance evaluations. For clarity, the

exact interrogatory and response is set forth below.

31.    Any and all documents and/or materials relate or pertain to Kathleen LeViness
and/or Susan Agro's education, background, resume, qualifications, trainings, work experience,
work at the Defendants, performance evaluations, job reviews, complaints, criticism, awards,
certificates with the Defendants.

Response:    Defendants object to this request on the grounds that it is overly broad,
overly burdensome, and seeks documents that are not reasonably calculated to lead to the discovery
of admissible evidence. Without waiving these objections, Defendants are not in possession of
any documents that are responsive to this request.    *Complete*

<u>See</u> DE 55-7.

Despite Defendants' response, during her deposition on August 24, 2017, Le Viness

testified about the existence of a November 2014 performance review of Susan Agro.  DE 58 at

6. As Defendants have yet to provide the performance review to Plaintiff, she now moves to compel the production of Susan Agro's resume and performance evaluations. DE 58 at 7. It is Plaintiff's position that Agro's resume and performance evaluations will lead to relevant evidence in support of Plaintiff's claim of discrimination. DE 56-1 at 9. Specifically, Plaintiff asserts that Agro's resume may show that Defendants retained Agro over Plaintiff, even though Agro was less qualified, and that Agro's performance review may show that Defendants continued to employ Agro despite "poor performance or incorrect review." DE 58 at 7.

According to Defendants, "they failed to limit this response, as intended, to the portion of the request seeking "complaints" regarding either Ms. Agro or Ms. Le Viness, as there were none." DE 59 at 9. Despite such failure, Defendants aver that Plaintiff's motion should be denied because Plaintiff failed to seek clarification of Defendants' interrogatory response even though a plain reading of such response should have prompted Plaintiff to inquire further. In support of their position, Defendants highlight Plaintiff's statement that "as a large organization, it is also difficult to imagine that Defendants were not in possession" of the documents requested in document request no. 31. DE 59 at 9. Defendants characterize such statement as an "admission," and argue that it was Plaintiff's duty to diligently and timely resolve discovery disputes within the time frame ordered by the Court. DE 59 at 9. Defendants additionally argue that Plaintiff's requests should be denied because Plaintiff has failed to explain why she waited nine months after the service of Defendants' objections to disclosing Agro's resume and performance evaluations, and two months after the close of discovery to compel such production. DE 59 at 10.

This Court is not persuaded that a plain reading of Defendants' response to interrogatory no. 31 necessitated a further inquiry for clarification by Plaintiff. Instead, the Court finds that Defendants, upon learning of their mistake, should have provided Plaintiff with either the

corrected information or a corrected response. Plaintiff cannot be faulted for relying on Defendants' interrogatory responses. However, the Court does find merit in Defendants' contention that Plaintiff failed to diligently raise the issue with the Court upon learning of the performance review. This Court's rules are clear. In cases where discovery disputes are at issue, parties are directed to call the Court for guidance. Plaintiff failed to do so, and, after confirming that discovery was in fact complete, she raised the issue at a status conference more than a month after fact discovery was closed.

Personnel files are not per se shielded from discovery, and a protective order can usually remedy any privacy concerns. Barella v. Village of Freeport, 296 F.R.D. 102, 106 (E.D.N.Y. 2013) (citation omitted). However, it remains the Plaintiff's burden to show how the requested records are relevant, material and proportional to the claims made. O'Garra v. Northwell Health, 2018 WL 502656, at *5 (E.D.N.Y. 2018). Upon consideration of the appropriate factors the Court finds Agro's performance evaluations are both relevant and proportional to the needs of the case. See Sotomayor v. City of New York, 862 F. Supp. 2d 226, 259 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013)(stating "that an evaluation is tainted by discriminatory motives can be shown if [plaintiff] can point to similarly situated employee who was evaluated differently"). The same cannot be said for Agro's resume. Although a resume may indicate whether a person's experience and education match a potential employer's requirements, a resume is not indicative of a person's performance after obtaining an employment position. Accordingly, the Court grants Plaintiff's request to compel Agro's performance reviews, and denies Plaintiff's request to compel Defendants to produce Agro's resume. Defendants are directed to provide Plaintiff with a copy of Agro's performance reviews within thirty (30) days of this order.

3. As to Compelling the Production of the Raiser's Edge Log

Finally, Plaintiff contends that discovery must be re-opened for the purpose of compelling Defendants to produce the Raiser's Edge log. Plaintiff postulates that such log is crucial to her case because it will "prove whether Raiser's Edge database was arbitrarily manipulated, whether database was incorrect and inaccurate, whether Plaintiff's complaints and whistle blowing were well founded." DE 56-1 at 11. Defendants oppose production of the Raiser's Edge log on the ground that such request is overly broad and vague, untimely, and would not be accurate. DE 59 at 11-12.

Although during Le Viness' deposition she acknowledged that a log exists that would show who logged into Raiser's Edge, and what time they logged in, DE 55-11, Plaintiff provides no justification as to why she waited until Le Viness' deposition to make such inquiry. Indeed, Plaintiff's amended complaint specifically alleges that Defendants uploaded the wrong data to Raiser's Edge, changed data willfully and arbitrarily making it difficult for Plaintiff to perform her job, and then terminated her employment under the pretext of poor performance. See Amended Complaint at ¶¶ 48, 49, 81, 83. Despite making such allegations in support of her discrimination claim, Plaintiff failed to inquire about the log file until the Le Viness deposition in August of 2017. As such, the Court finds that Plaintiff failed to act diligently in this respect. Such lack of diligence is underscored by the fact that Plaintiff – even after learning of such log – failed to raise the issue with Defendants or the Court until over a month after discovery concluded. Furthermore, compelling Defendants to produce a log of the Raiser's Edge database at this late date would likely prejudice Defendants as they would have to work with a third party to obtain the log file. This could involve additional time and expense and likely require an additional extension of time to complete discovery. Upon weighing the appropriate factors, the

Court determines that there is simply no basis to re-open discovery for the purpose of compelling Defendants to produce the log.

Further, the Court finds the request for the "log file" to be disproportionate to the needs of this case. Defendants characterize the log file as containing information regarding approximately 310,000 constituents, with many fields associated with each record, equaling millions of data elements. Additionally, Defendants have provided a declaration of Ed Testa, in which he states that "[t]he Raiser's Edge database is dynamic, with updates made on a daily basis, and it only retains a notation of when, and by whom, a last modification was made to a particular entry (and not what the specific modification was) overriding any notation of date, and by whom, for any preceding modification to that same entry. Therefore, such a log would only include modifications from that time on entries in which no further modifications were made." See Testa Declaration ¶ 4, DE 59, Ex. 3. As further explained in the Testa Declaration, "the majority of notation changes made in 2014 would have been overwritten by a modification in the intervening years. Therefore, the unspecified log that Ms. Chen seeks would not reliably demonstrate the dates that either Ms. Le Viness or [Testa] made modifications in 2014." Id. Based upon the parties' submissions, this Court finds that requiring Defendants to produce the unspecified log file would likely require additional time and resources while at the same time yield little, if any, benefit. As the discovery rules must "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, the Court denies Plaintiff's request to compel Defendants to produce the log file.

CONCLUSION

Plaintiff's motion to re-open and compel discovery is decided as follows:

(1) Plaintiff's motion to re-open discovery is granted to the extent that

    a. Plaintiff may take limited depositions of both Testa and Le Viness. Each deposition shall be limited to questions regarding the June 2014 Memo and the Le Viness notes, and each deposition shall be limited to one hour. Both depositions must be completed within thirty (30) days of this order.

    b. Defendants shall provide Plaintiff with a copy of Agro's performance reviews within thirty (30) days of this order.

(2) Plaintiff's request to compel the production of Agro's resume is denied.

(3) Plaintiff's request to compel the production of the Raiser's Edge log file is denied.

Additionally, the Court sets the following discovery timelines:

- All discovery shall conclude by April 30, 2018;

- The last date to take the first step in dispositive motion practice is May 7, 2018; and

- Parties shall submit their proposed pretrial order by May 30, 2018.


Dated: Central Islip, New York
       March 16, 2018

                             /s/ Anne Y. Shields
                             United States Magistrate Judge